<u>NOT FOR PUBLICATION</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| ———————————————— : | | |
| D.C., : | | |
| : | | |
| Plaintiff, : | | Civil No. 20-2484 (RBK) |
| : | | |
| v. : | | **OPINION** |
| : | | |
| COMMISSIONER OF SOCIAL : | | |
| SECURITY, : | | |
| : | | |
| Defendant. : | | |
| ———————————————— | | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff D.C.'s Appeal (Doc. No. 1) from the final

decision of the Commissioner of the Social Security Administration denying her application for

Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. For the

reasons set forth below the Commissioner's decision is **AFFIRMED.**

**I.     BACKGROUND**

**A.  Procedural History**

On June 1, 2016, Plaintiff filed an application for disability benefits alleging her

disability began on October 1, 2015 and that she suffered from lupus, fibromyalgia, degenerative

disc disease, osteoarthritis, hypothyroidism, anxiety with panic attacks, chronic fatigue, chronic

pain, and paroxysmal supraventricular tachycardia. (Doc. No. 9-5, at R. at 73–74, 85–86). Her

claim was initially denied and again on reconsideration. (R. at 84, 98).

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was

held on August 31, 2018. (R. at 29–72). On November 16, 2018, the ALJ issued his decision

finding Plaintiff was not disabled within the meaning of the Act. (R. at 12–24). Plaintiff's request

for review of the ALJ's decision was denied by the Appeals Council on January 15, 2020. (R. at

1–6). Less than three months later, on March 6, 2020, Plaintiff filed the instant action seeking

judicial review of the ALJ's decision. (Doc. No. 1).

## II.    LEGAL STANDARD

### A.  Sequential Evaluation Process

In order to receive benefits under the Social Security Act ("SSA"), the claimant must be

disabled within the meaning of the Act. The Commissioner applies a five-step evaluation process

to make this determination. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of

establishing his disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607,

611–12 (3d Cir. 2014). First, the claimant must show that he was not engaged in "substantial

gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must

demonstrate that he has a "severe medically determinable physical and mental impairment" that

lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20

C.F.R. § 404.1509. Third, either the claimant shows that his condition was one of the

Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the

analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not

equivalent to a listed impairment, the ALJ must assess the claimant's residual functional capacity

("RFC"), and the claimant must show that he cannot perform his past work. 20 C.F.R. §

404.1520(a)(4)(iv); 20 C.F.R. § 404.1520(e). If the claimant meets his burden, the burden shifts

to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the

Commissioner must establish that other available work exists that the claimant can perform

2

based on his RFC, age, education, and work experience. 20 C.F.R. § 404.1520 (a)(4)(v); *Zirnsak*, 777 F.3d at 612. If the claimant can make "an adjustment to other work," he is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

### B.  Review of the Commissioner's Decision

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak*, 777 F.3d at 610 (citing 42 U.S.C. §405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g., Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F.Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 110, 114). A district court's review of a final determination is a "qualitative

exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III.   FACTUAL BACKGROUND

### A.  Plaintiff's History

Plaintiff, now 55 years old, last worked as a certified ophthalmic technician in 2015. (R. at 599). She graduated from high school and previously completed a certificate program in ophthalmic technician services. (R. at 208, 599). At the time of the hearing, she lived with her two adult daughters and her six-year-old granddaughter. (R. at 45, 599). Every day, Plaintiff drove her granddaughter to daycare, drove herself to various appointments, paid bills, performed light cleaning around the house (vacuuming, washing dishes, sweeping, and dusting), prepared and cooked dinner, let the dogs out and fed them, and shopped for groceries. (R. at 55, 192, 194, 202, 204). During the relevant period, she admitted that she took care of her husband, her two grown daughters, her granddaughter, and the family's pets. (R. at 192–93, 201). Plaintiff also went to church, went on a vacation cruise, got together with friends occasionally, was active on social media, and enjoyed computer games and watching movies. (R. at 55, 59, 195–96, 204).

#### i.  Mental Health History

Although Plaintiff complained of symptoms of poor sleep, low energy, crying spells, panic attacks in crowds, poor concentration and memory deficits, she did not engage in any outpatient mental health counseling during the relevant period. (R. at 600). Instead, she sought help from her primary care physician, Dr. Michael J. Attanasio, who prescribed her Ativan to treat her anxiety. (R. at 514). In April of 2016, Plaintiff reported to Dr. Attanasio that her medications were working well for her anxiety. (R. at 514). By August of 2016, she reported that she had no depression, anxiety, mania, sleep disturbances, or paranoia. (R. at 578).

Throughout 2017, Plaintiff began to complain that she was feeling depressed; her symptoms related mostly to her physical ailments. (R. at 709). She also reported an increase in her anxiety levels and an escalation in family issues and external stressors. (R. at 700, 703, 706, 709). In October of 2017, Plaintiff was prescribed Trintellix for her depression and in a follow up appointment four weeks later, she reported that her symptoms had improved (R. at 700, 696). In December of 2017 and January of 2018, Plaintiff reported an improvement in her depression and that her anxiety was stable. (R. at 693, 692, 690, 688). By February of 2018, Plaintiff reported that both her anxiety and depression were stable on medication. (R. at 682). She reported the same in March and April of 2018 (R. at 676, 680).

### ii.   Consultative Mental Status Examination with Dr. Lawrence G. Mintzer

On September 8, 2016, Plaintiff underwent a consultative mental status examination with Dr. Lawrence G. Mintzer. (R. at 599–602).  She drove herself to the appointment and went alone (R. at 599). Plaintiff told Dr. Mintzer that she had issues with anxiety and depression for 25–30 years but that she was not able to work primarily due to pain in her body. (R. at 599–600). She admitted that she was not in any mental health treatment and, indeed, stopped treatment with a psychotherapist in October of 2015—her alleged onset date. (R. at 600). During the relevant period, Plaintiff did not undergo any mental health treatment, and she has never been hospitalized for psychiatric purposes. (*Id.*). She told Dr. Mintzer that she did most of the cooking at her house but only a little bit of the cleaning. (*Id.*). She grocery shopped, got along "very well" with other people, and participated in paying bills. (*Id.*). She kept up with her own grooming and hygiene, took care of her dogs, and took her granddaughter to daycare every day. (*Id.*).

### iii.   Expert State Agency Psychologists

On September 19, 2016, state agency psychologist Dr. Wanda Machado, independently reviewed the record and Dr. Mintzer's assessment and determined that Plaintiff's mental impairments were non-severe. (R. at 79). Dr. Machado highlighted that Plaintiff could prepare meals, made dinner four times per week, drove herself places, and grocery shopped (*Id.*). Likewise, she relied on Dr. Attanasio's uniform assessments that Plaintiff had a normal mental status and concluded "[b]ased on [her] history of present illness and [the] findings in this assessment, the evidence in [the] record describes the presence of a non-severe condition" (*Id.*). She found that Plaintiff had only mild limitations in the following categories: activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (*Id.*). Plaintiff had no episodes of decompensation (*Id.*).

On November 3, 2016, state agency physician Richard J. Hamersma independently reviewed the record and similarly found that "the totality of the evidence is consistent with the initial decision of a non-severe mental impairment." (R. at 93). Like Dr. Machado, Dr. Hamersma found Plaintiff had only mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (R. at 92). Dr. Hamersma highlighted that Plaintiff alleged no mental condition or limitations. (R. at 93). Given all of the evidence—including the benign mental status examinations and Dr. Mintzer's benign examination—he concluded that Plaintiff's mental impairments were properly considered to be non-severe. (R. at 92–93).

### B. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 1, 2015, although she continued to receive earnings from temporary disability through her employer after this date. (R. at 14).

At step two, the ALJ determined the Plaintiff had the following severe impairments: systemic lupus erythematosus, fibromyalgia, degenerative disc disease of the cervical, thoracic, and lumbar spine, and bilateral shoulder degenerative joint disease. (*Id.*). With regard to Plaintiff's medically determinable impairments of anxiety and depressive disorder, the ALJ explained they did not cause more than a minimal limitation in her ability to perform basic mental work activities and consequently were non-severe. (R. at 16). In making this finding the ALJ considered the four broad areas of mental functions set forth in the regulations: (1) understanding, remembering, or applying information; (2) interacting with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself. (R. at 17). With respect to understanding, remembering, or applying information, the ALJ found the Plaintiff's limitations to be mild because although she had difficulty remembering generally, following instructions, and completing task, she also could prepare meals, pay bills, drive, and shop. (*Id.*). For interacting with others, the ALJ also found the Plaintiff's limitation to be mild because even though she did have difficulty engaging in social activities, she was able to spend time with others, shop, go on a cruise, and deal appropriately with authority. (*Id.*). Under the third area of mental functions—ability to concentrate, persist, or maintain pace—the ALJ concluded Plaintiff's limitations were no more than mild because despite some difficulty in completing tasks and focusing generally, she could prepare meals, drive, shop, manage funds, and successfully completed the serial sevens. (*Id.*). For the final area of mental functions, ability to adapt and manage oneself, the ALJ found no limitations because Plaintiff was able to care for her pets, manage personal hygiene, had no issue getting along with providers and staff, no problems with temper control, and had a normal mood and affect. (*Id.*).

Before moving onto Step 3, the ALJ noted that his findings at Step 2 were not an assessment of the Plaintiff's residual functional capacity but would still be considered in formulating the RFC:

> the limitations identified in the "Paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at step 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 . . . require[] a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "Paragraph B" mental functional analysis.

(R. at 17–18). At Step 3, the ALJ concluded the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18). After consideration of the entire record and all of the Plaintiff's symptoms, the ALJ constructed Plaintiff's residual functional capacity, finding that she was able to perform:

> sedentary work as defined in 20 CFR 404.1567(a) except frequently climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; frequent use of either the left or right upper extremity for reaching in any direction; occasional use of the right upper extremity for pushing/pulling; limited to frequent fine fingering, grasping, or handling of small objects (smaller than golf ball); avoid concentrated exposure to fumes, odors, dust, gases or other environmental irritants; be able to adjust position hourly, while remaining at or near the workstation/area.

(R. at 19). At Step 4, the ALJ concluded that in light of the RFC the Plaintiff was capable of performing her past relevant work as an optician technician. (R. at 23). Therefore, he found that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 23).

## IV.    DISCUSSION

### A.  Step Four Errors

Plaintiff's sole issue on appeal is that the ALJ erred by failing to account for the impact of her mild mental limitations at step four, both in the RFC analysis and the hypothetical

question posed to the vocational expert ("VE"). The Commissioner contends that if an ALJ finds a limitation to be minimal, it is not error to omit the limitation from the RFC assessment. Likewise, the Commissioner argues that an ALJ has discretion to exclude limitations that are not credibly established from the hypothetical question posed to the VE, and that is what occurred here. Lastly, the Commissioner points out that any error is harmless because the record supports a finding that even with additional limitations to Plaintiff's RFC that account for her mild mental limitations, there exists a significant number of jobs in the national economy that she could perform. Plaintiff contends we cannot consider the ALJ's decision harmless error because the VE did not address whether Plaintiff gained any skills from her past work which were transferable to other sedentary occupations. Likewise, Plaintiff intimates that the harmless error argument proposed by the Commissioner is a post-hoc rationalization. We will start by addressing the harmless error argument, which, if correct, would obviate the need to consider any other alleged errors.

Although the Commissioner is correct that even with the added mental limitations the record supports a finding that a significant number of jobs exist in the national economy that Plaintiff could perform,[1] we cannot base our decision on such a rationale because it was not a basis for the ALJ's decision. In the decision itself, the ALJ never reached Step 5 of the sequential evaluation process—where he would determine whether a significant number of jobs exist in the national economy that Plaintiff could perform—because he concluded at Step 4 that Plaintiff could perform her past relevant work. Therefore, the rationale offered by the Commissioner to

---

[1] During the hearing before the ALJ, the vocational expert testified that even if the Plaintiff's RFC was modified to include a limitation for simple, routine instructions, simple work-related decision, minor changes in routine work setting, and occasional interactions with coworkers or the general public, she could still perform the occupations of printed circuit board inspector, type copy examiner, and order clerk, food and beverage, all of which existed in significant numbers in the national economy. (R. at 66–67).

uphold the ALJ's decision is a quintessential post-hoc rationalization: a reason not articulated by the ALJ himself. Because the "ALJ's decision must stand or fall with the reasons set forth in" his decision, we cannot find that any alleged error was harmless. *Peel v. Colvin*, No. CV 15-255, 2016 WL 4500939, at *5 (E.D. Pa. Aug. 29, 2016).

Nevertheless, remand is not warranted here because we find that the ALJ did not err in formulating the RFC or excluding the mild mental limitations from the hypothetical posed to the VE. The residual functional capacity assessment comes into play at step four, where the ALJ determines whether, despite her limitations, the claimant retains capacity to perform his past relevant work. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007); 20 C.F.R. § 404.1545(a)(5)(i). In making this determination, the ALJ must consider all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). When the claimant has more than one impairment, the ALJ must consider "all of [the claimant's] medically determinable impairments . . . including [the] medically determinable impairments that are not 'severe,'" when assessing her residual functional capacity. 20 C.F.R. § 404.1545(a)(2); *see also* SSR 96-8. However, "the ALJ need only include in the RFC those limitations which he finds credible." *Garrett v. Comm'r of Soc. Sec.*, 274 Fed. Appx. 159, 163 (3d Cir. Apr. 17, 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000)). Where the ALJ concludes that a claimant's deficiency is "so minimal or negligible that . . . it would not limit her ability" to perform required work tasks, the ALJ may exclude that deficiency or limitation from the RFC without error. *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004); *see also Lee v. Comm'r of Soc. Sec.*, 248 Fed. Appx. 458, 462 (3d Cir. Sept. 28, 2007) (reasoning "[t]here was no need to include a mental impairment in the hypothetical as the determination that her condition was not severe was supported by substantial evidence.").

First, contrary to Plaintiff's contention, the ALJ did consider her mild mental limitations in formulating the RFC. At Step 2, the ALJ concluded that the Plaintiff's medically determinable impairments of anxiety and depressive disorder did not cause more than minimal limitations in her ability to perform basic mental work activities and therefore they were non-severe. In reaching this conclusion, the ALJ considered notes about her demeanor and affect from treating sources; results from memory and concentration tasks during psychological evaluations; and her own reports of her activities of daily living and social functioning. Based on this evidence he found that the claimant has, at most, mild mental limitations in: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) the ability to concentrate, persist, or maintain pace. However, in the fourth area—the ability to adapt or manage oneself—the ALJ found the claimant suffered from no limitations. The ALJ then concluded that because the claimant's medically determinable mental impairments caused no more than mild limitations in any of the functional areas, they were non-severe. Importantly, the ALJ further explained that his RFC assessment reflects the degree of mental limitations he found at Step 2. Finally, the ALJ noted that in formulating the RFC, he carefully considered the *entire* record. This discussion and incorporation by reference is sufficient to satisfy the requirement that the ALJ consider all of the Plaintiff's impairments in formulating the RFC. *Younge v. Berryhill*, No. CV 16-5271, 2017 WL 2978758, at *13 (E.D. Pa. May 31, 2017) (concluding the ALJ adequately discussed why the plaintiff's mental impairments were not severe when he noted that the residual functional capacity assessment reflected the degree of limitation he found at Step 2 and therefore did not need to discuss it in the RFC evaluation).

Second, the Commissioner is correct that an RFC assessment does not need to contain in-depth analysis on mental impairments when the ALJ finds earlier in his opinion that a claimant's

mental impairments are no greater than mild. *See, e.g., Holley v. Comm'r Soc. Sec.*, 590 F. App'x 167, 169 (3d Cir. 2014) (holding that when ALJ found that claimant "had—at most—minor mental impairments," ALJ did not err when RFC included no mental limitations); *see also Chandler v. Berryhill*, Civ. A. No. 16-4516, 2018 WL 3575258, at *3, *6 (E.D. Pa. July 24, 2018) (holding that when plaintiff's mental impairments caused no more than mild limitation in first three functional areas of Paragraph B criteria, ALJ did not err by failing to include plaintiff's mild limitations in social functioning in RFC); *Mari v. Berryhill*, Civ. No. 15-5093, 2017 WL 6209233, at *2–3 (E.D. Pa. Dec. 8, 2017) (holding that ALJ did not err by failing to include plaintiff's mild limitations in social functioning in RFC after finding plaintiff's social impairment was mild). Thus, even if the ALJ's failure to analyze the mild mental limitations constituted an error, a dubious proposition,[2] it still does not warrant reversal. *See Makowski v. Comm'r of Soc. Sec.*, No. CV 16-1656 (JBS), 2017 WL 3151243, at *7 (D.N.J. July 24, 2017) (concluding "even if the ALJ did not discuss the impact of the admittedly mild limitations from Plaintiff's mental impairments at the RFC stage, despite having discussed them at length elsewhere in the opinion, this omission is not reversible error because the ALJ was entitled to not include 'minimal or negligible' deficiencies in the RFC.").

The claimant's argument that the ALJ omitted the mild mental limitations from the hypothetical question posed to the vocational expert is equally unavailing. "Testimony of vocational experts in disability determination proceedings typically includes, and often centers

---

[2] As the Commissioner points out *Balla* is distinguishable from the present case. In *Balla*, we remanded the matter to the ALJ because she did not "explain the 'impact of [the] Plaintiff's mental impairments on her ability to' complete the relevant work." *Balla v. Comm'r of Soc. Sec.*, No. CV 18-00386 (RBK), 2019 WL 2482661, at *3 (D.N.J. June 14, 2019). Here, the ALJ did explain the impact that Plaintiff's mild mental limitations would have on her ability to perform work related activities when he concluded they would not cause more than a minimal limitation on her ability to perform basic mental work activities. He then went on to examine the relevant medical evidence, explain why the mental limitations were not severe, and conclude that the mild mental limitations were considered in formulating the RFC. This is much different than the ALJ's passing reference in *Balla*.

upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014). Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy. *Id.* The hypothetical must "accurately portray" any impairments of the claimant. *Id.* To accurately portray a claimant's impairments, the ALJ must include all "*credibly established limitations*" in the hypothetical. *Id.*

The Third Circuit's decision in *Zirnsak* explains the framework employed by this circuit to determine whether a limitation is credibly established. First, limitations that are supported by medical evidence and are "otherwise uncontroverted in the record" must be included in the ALJ's hypothetical for us to rely on the VE's response to that hypothetical. *Id.* However, where a limitation is supported by medical evidence, but is opposed by other evidence in the record, the ALJ has discretion to choose whether to include that limitation in the hypothetical. *Id.* at 615. This discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason. *Id.* Finally, the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible. *Id.*

Just like the impairments in *Zirnsak*, the impairments here, anxiety and depressive disorder, fall into the second category of the framework: they are supported by medical evidence but are controverted by other evidence in the record. Medical examinations from 2015 to 2017 support her claim that she suffers from depression. Although she reported an increase in her anxiety and panic attacks in October of 2017, mental status examination findings continued to be benign. Specifically, the ALJ noted that from October of 2017 through July of 2018, she was cooperative, alert, oriented, had intact cognitive functioning, good judgment and insight, and logical and good directed thought processes. Likewise, her claims of depression and anxiety

were disputed by other evidence in the record. For instance, she reported that her symptoms were well controlled with medication; a consultative psychological examination found that although she was a bit anxious and depressed, her thought processes were goal directed, her speech was coherent, and her impulse control, insight, and social judgment were good. She was also able to complete the serial sevens and spell the word "world" forwards and backwards. Her ability to drive, prepare meals, manage funds, shop, and take a cruise also contradicted her claims that she had difficulty concentrating, remembering information, and engaging in social activities. Lastly, state agency psychological consultative examiner, Dr. Wanda Machado, found that the Plaintiff's mental limitations were non-severe, and this was affirmed by Dr. Richard Hamersma.

This Circuit does "not require an ALJ to submit to the [VE] every impairment *alleged* by a claimant." *Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014). Rather, the ALJ is only required to submit credibly established limitations. *Id.* Where, as here, a limitation is supported by some medical evidence but controverted by other evidence in the record, it is within the ALJ's discretion whether to submit the limitation to the VE. *Id.* That discretion was properly exercised here because there is substantial evidence in the record to support the ALJ's finding that Plaintiff's mental impairments were not severe—namely, her benign medical examinations, her lack of demonstrated problems with activities of daily living, and the state agency psychological consultative examiners' findings. In making credibility determinations like this one, this Court will "not substitute our own judgment for that of the fact finder." *Id.* at 616. Accordingly, we find that the hypothetical question posed to the VE was not deficient for failure to fully reflect Plaintiff's limitations. *Lee v. Comm'r Soc. Sec.*, 248 F. App'x 458, 462 (3d Cir. 2007) (concluding "[t]here was no need to include a mental impairment in the hypothetical as the determination that her condition was not severe was supported by substantial evidence.").

## V.   CONCLUSION

For the reasons set forth above, the Commissioner's decision is affirmed.

Dated: 5/10/2021                                    s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge